UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

FILED

SEP 14 2026

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

CURTIS RICHARD MYRIE,

Plaintiff,

v. Case No.: __________

EQUIFAX INFORMATION SERVICES LLC, JURY TRIAL DEMANDED

Defendant.

___________________________________/

COMPLAINT FOR STATUTORY AND ACTUAL DAMAGES,
PUNITIVE DAMAGES, AND INJUNCTIVE RELIEF
UNDER THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 et seq.

Plaintiff Curtis Richard Myrie ("Plaintiff"), proceeding pro se, by and through his own individual efforts, alleges the following against Defendant Equifax Information Services LLC ("Equifax"):

I. INTRODUCTION

1. This is a civil action for statutory damages, actual damages, punitive damages, and injunctive relief arising from Defendant Equifax's willful and

negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA" or the "Act").

2. Equifax has repeatedly published false, inaccurate, and legally void information on Plaintiff's consumer credit report — specifically, a Collection Account attributed to the Virginia Division of Child Support Enforcement ("DCSE"), Account Ending 8158 — despite receiving actual, direct, repeatedly signed-for notice that the underlying obligation was vacated by a court of competent jurisdiction due to a complete and admitted absence of service.

3. Plaintiff has disputed this account with Equifax no fewer than nine (9) separate times. Plaintiff has filed multiple complaints with the Consumer Financial Protection Bureau ("CFPB"). Plaintiff has provided Equifax with a certified court order vacating the underlying obligation. Plaintiff has sent no fewer than five (5) separate certified mail notices directly to Equifax's Office of Consumer Compliance/Legal Department in Atlanta, Georgia, each of which was personally received and signed for by the same identified Equifax representative. On at least one occasion, Equifax's own written response to Plaintiff — issued the day after Equifax personally received Plaintiff's certified mail enclosing the vacating court order — falsely claimed that "no new relevant information was provided" and closed the investigation without any genuine review. Equifax nonetheless continues to report the account, including active derogatory monthly updates as recently as May 2026 — approximately nineteen (19) months after the vacating order was entered, and continuing through and beyond Equifax's own most recent signed receipt of direct notice on August 1, 2026.

4. As a direct and proximate result of Equifax's violations of the FCRA, Plaintiff has been denied credit, has suffered concrete financial harm, has endured emotional distress, and has sustained damage to his professional reputation and business interests.

## II. PARTIES

5. Plaintiff Curtis Richard Myrie is a natural person residing at 72 Gough Avenue, Apt. 17, West Warwick, Rhode Island 02893. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Defendant Equifax Information Services LLC is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), with its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax regularly engages in the business of assembling, evaluating, and disseminating consumer credit information on consumers residing within the District of Rhode Island, including Plaintiff. Equifax may be served with process through its registered agent: Corporation Service Company, 501 Lakeview Drive, Suite 200, Vernon, CT 06066 (or such other registered agent as may be designated pursuant to Fed. R. Civ. P. 4).

## III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 15

U.S.C. § 1681p (providing jurisdiction over actions arising under the FCRA) and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Venue is proper in this District pursuant to 15 U.S.C. § 1681p, which provides that an action under the FCRA may be brought in the district where the consumer resides or where the violation occurred. Plaintiff resides in the District of Rhode Island, and the violations alleged herein occurred in this District.

## IV. STATEMENT OF FACTS

### A. The Underlying Administrative Support Order Was Never Validly Served

9. On or about December 7, 2022, the Virginia Division of Child Support Enforcement issued an Administrative Support Order ("ASO") under Division Case No. 0005516156, purporting to establish a child support obligation against Plaintiff in the amount of $1,332.00 per month.

10. The ASO was never served on Plaintiff as required by Virginia Code §§ 63.2-1916 and 8.01-296(2)(b). The "Service of Initial Administrative Support Order" form maintained in DCSE's own file is entirely blank — no box checked, no date entered, no serving officer identified.

11. On October 11, 2024, the Chesterfield Juvenile & Domestic Relations District Court, Commonwealth of Virginia, Case No. JA086141-02-00, entered an Order vacating the ASO in its entirety. The Order provides, in

relevant part:

"THE DIVISION OF CHILD SUPPORT ENFORCEMENT ACKNOWLEDGES THERE WAS NO SERVICES ON THE ADMINISTRATIVE SUPPORT ORDER."

and

"THE ADMINISTRATIVE SUPPORT ORDER BE VACATED DUE TO NO SERVICE OF THE PETITION OF CHILD SUPPORT."

A certified copy of the October 11, 2024 Order is attached hereto as Exhibit A.

12. Because the ASO was never served, it never obtained legal force against Plaintiff under the laws of the Commonwealth of Virginia. Any obligation, balance, charge-off, or delinquency status derived from the ASO is inaccurate as a matter of law — not merely outdated, disputed, or subject to interpretation.

13. On August 22, 2025, the Chesterfield Juvenile & Domestic Relations District Court entered a Temporary Order in Case No. JA086141-03-00, ordering that Plaintiff owe zero ($0.00) in arrears. A copy of the August 22, 2025 Temporary Order is attached hereto as Exhibit B.

B. Equifax's Reporting of the Legally Void Account

14. Notwithstanding the October 11, 2024 vacating Order, Equifax has

continuously and repeatedly published a Collection Account on Plaintiff's consumer credit report attributed to "DIVISION OF CHILD SUPPORT," Account Ending 8158, with a reported balance that has fluctuated between $642.00 and $928.00 across reporting cycles — notwithstanding that the court of competent jurisdiction has ordered zero arrears.

15. As of Plaintiff's consumer credit report dated August 1, 2026, Equifax reported the subject account with the following characteristics:

a. Reported Balance of $928.00 exceeding the reported High Credit of $856.00 — an internal mathematical inconsistency that violates the Metro 2 Format field integrity requirements promulgated by the Consumer Data Industry Association ("CDIA");

b. Date of First Delinquency reported as "N/A" — no Date of First Delinquency ("DOFD") is reported, in violation of 15 U.S.C. § 1681c(c), which requires the date of commencement of the first delinquency to be reported in order to determine compliance with the seven-year reporting limitation;

c. Account Status reported as "Collection Account" while simultaneously reporting a "Charge Off Amount" of $928.00 — an inconsistent and contradictory Metro 2 status combination that fails to identify the account's actual disposition;

d. Active derogatory updates through May 2026, including notations reading "LAST REPORTED DELINQUENCIES: 05/2026=06, 02/2026=06"

— indicating that Equifax and/or the furnisher continued to actively re-rate this account as delinquent on a monthly basis, approximately nineteen (19) months after the vacating Order was entered.

16. The subject account is reported by Equifax only. Experian Information Solutions, LLC ("Experian") and TransUnion LLC ("TransUnion") do not report this account. TransUnion independently deleted the identical tradeline from Plaintiff's consumer credit report in or about June 2025 after receiving the same documentation provided to Equifax — demonstrating that the information is inaccurate and that Equifax's continued reporting fails to meet the standard of "maximum possible accuracy" required by 15 U.S.C. § 1681e(b).

C. Plaintiff's Eight Dispute Cycles

17. Plaintiff has disputed the subject account with Equifax no fewer than nine (9) separate times, commencing in or about 2024. In each such dispute, Plaintiff provided or caused to be provided to Equifax a certified copy of the October 11, 2024 Chesterfield J&DR District Court Order vacating the underlying ASO.

18. In each instance, Equifax's dispute processing system forwarded the dispute to the furnisher through the Electronic Online Summary of Consumer Activity Report ("e-OSCAR") automated verification system. The furnisher verified the account through its automated process, and Equifax continued to report the account — without producing any documentation, without conducting any substantive review of the court order provided by

Plaintiff, and without providing a description of the procedure used to verify the information (a "Method of Verification") as required by 15 U.S.C. § 1681i(a)(6)(B)(iii).

19. Equifax's responses to Plaintiff's disputes were formulaic and substantially identical across at least eight (8) of the nine (9) dispute cycles, indicating that no substantive or reasonable reinvestigation was conducted at any point.

20. By written notice dated July 23, 2026, Confirmation Number 6204514393, Equifax responded to Plaintiff's dispute of the subject account — identified by Equifax in that notice as "DIVISION OF CHILD SUPPORT Account Ending 8158" — stating: "Our records show that you previously disputed the item(s) listed below at least twice within the last 90 days, and that the disputed information was found to be accurate based on those prior investigations. Our review indicates that no new relevant information was provided with the current dispute, and therefore we are closing our investigation with respect to the below item(s)." A true and correct copy of this written response is attached hereto as Exhibit H.

21. Equifax's July 23, 2026 written response was issued one (1) day after Equifax personally received, and its representative James McKellar personally signed for, Plaintiff's certified mail notice enclosing the certified vacating court order, delivered on July 22, 2026 (USPS tracking no. 9589 0710 5270 2744 9738 76; see Exhibit D-1). Equifax's claim that "no new relevant information was provided" is false: a certified order of a court of competent jurisdiction vacating the very obligation underlying the disputed

account is unquestionably new and relevant information, and Equifax's own mailroom or receiving department had physically received and signed for that order the day before issuing its written refusal to investigate.

22. Equifax's invocation of the frivolous-or-irrelevant-dispute closure mechanism under 15 U.S.C. § 1681i(a)(3) was improper and made in bad faith. Section 1681i(a)(3) permits a consumer reporting agency to terminate a reinvestigation only where it "reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information." A certified court order vacating the underlying obligation is neither frivolous nor irrelevant, and Equifax's one-day "review" of documentation it had just received by certified mail demonstrates that no genuine reinvestigation occurred.

22A. Equifax's noncompliance did not end with its July 23, 2026 refusal. By written Dispute Results notice dated August 5, 2026, Confirmation Number 6215510760, Equifax completed a subsequent reinvestigation of the same subject account and concluded, in Equifax's own words: "You indicated that you were not legally liable for this item. Our investigation concluded that the item belongs to you." A true and correct copy of this Dispute Results notice is attached hereto as Exhibit I.

22B. Equifax's August 5, 2026 Dispute Results notice (Exhibit I) demonstrates that Equifax's reinvestigation, far from correcting the account, made it worse: the reported balance increased from $924.00, as it stood when Plaintiff's dispute was received, to $928.00, as reported following the completed "investigation." A reinvestigation that results in an

increased, still-inaccurate balance — without any explanation, adjustment, or acknowledgment of the vacating court order or the underlying agency's own zero-balance payment record — is not a reasonable reinvestigation within the meaning of 15 U.S.C. § 1681i(a)(1)(A); it is confirmation that Equifax again forwarded the dispute through automated e-OSCAR channels and accepted the furnisher's bare re-verification without independent review.

22C. Exhibit I further reflects that, as of August 5, 2026, Equifax reported a "Date of 1st Delinquency" of 05/01/2026 for an account with a "Date Opened" of 03/01/2022 — a gap of more than four (4) years between account opening and first delinquency that is inconsistent with continuous monthly collection-account reporting throughout that period, and that suggests the delinquency date has been advanced (re-aged) in a manner inconsistent with 15 U.S.C. § 1681c(a)(4) and Metro 2 Format reporting standards, which require the Date of First Delinquency to remain fixed to the date the account first became delinquent, not to be advanced with each subsequent dispute cycle.

D. CFPB Complaints

23. Plaintiff filed multiple complaints with the Consumer Financial Protection Bureau ("CFPB") regarding the subject account, including complaints dated on or about May 21, 2026, July 19, 2026, and July 27, 2026. CFPB complaint confirmations and Equifax's responses are attached hereto as Exhibit C.

24. In Equifax's responses to the CFPB, Equifax stated that it "verified" the account but did not address the vacating court order, did not explain how an obligation vacated for lack of service may be "verified" as accurate, and did not provide the requested Method of Verification.

25. In or about July 2026, Equifax demanded identity verification from Plaintiff rather than substantively responding to the legal and Metro 2 compliance issues raised in Plaintiff's CFPB complaint. Plaintiff complied with the identity verification demand. Equifax thereafter re-issued the identical identity verification demand — a repeated stall tactic that did not address the substantive inaccuracies in the reported account.

26. On July 27, 2026, Plaintiff expressly stated in his CFPB complaint: "I intend to pursue this matter in federal court in the United States District Court for the District of Rhode Island if it is not substantively resolved." Equifax's response closed on or about August 4, 2026, with no substantive resolution.

E. Direct Certified Mail Notice to Equifax — Repeatedly Received and Personally Signed For

27. In addition to the nine (9) dispute cycles and CFPB complaints, Plaintiff sent direct written notice to Equifax by certified mail, return receipt requested, on no fewer than five (5) separate occasions, each addressed to Equifax Information Services LLC, Attn: Office of Consumer Compliance/ Legal Department, P.O. Box 740256, Atlanta, Georgia 30374, and each enclosing the certified Chesterfield J&DR District Court Order vacating the

underlying ASO and supporting documentation of the account's inaccuracy. Each of these five (5) certified mailings was personally received and signed for by the same identified Equifax representative, "James McKellar," as follows:

a. On or about May 27, 2026 (USPS tracking no. 9589 0710 5270 2744 9700 73);

b. On or about July 22, 2026 (USPS tracking no. 9589 0710 5270 2744 9738 76);

c. On or about July 22, 2026, a second, separate mailing (USPS article no. 9590 9402 9588 5121 5870 38);

d. On or about July 29, 2026 (USPS article no. 9590 9402 9588 5121 5870 45); and

e. On or about August 1, 2026 (USPS tracking no. 9589 0710 5270 3831 6006 20) — the identical date as the credit report reflecting the subject account's continued, uncorrected reporting referenced in Paragraph 15, above.

The certified mail receipts (USPS PS Form 3800) and signed domestic return receipts (USPS PS Form 3811) confirming each of these five direct, personal deliveries to Equifax are attached hereto as Exhibit D-1.

28. Equifax's repeated receipt and signature confirmation of direct notice on five separate occasions spanning more than two months — separate and apart from the CFPB complaint process and the automated e-OSCAR dispute channel — establishes that Equifax had actual, direct, non-automated, and repeated notice of the vacating court order and the

inaccuracy of the subject account, delivered to and personally received each time by the same identified Equifax employee or agent. As set forth in Paragraphs 20-22, above, Equifax's July 23, 2026 written response demonstrates that this notice was received and then affirmatively disregarded within twenty-four (24) hours, rather than reviewed. Equifax's continued reporting of the subject account notwithstanding this sustained, repeated, personal notice is conclusive evidence of willfulness within the meaning of 15 U.S.C. § 1681n.

F. Direct Certified Mail Notice to the Furnisher

29. On or about April 27, 2026, and again on or about May 19, 2026, Plaintiff sent direct written notice to the Virginia Division of Child Support Enforcement, 802 W. 9th Street, Richmond, Virginia 23219, demanding correction of its credit reporting and enclosing the certified vacating court order. The second notice was sent by certified mail, return receipt requested, USPS tracking number 9589 0710 5270 2744 9700 66. DCSE received and signed for this notice on May 27, 2026, as evidenced by the signed return receipt (PS Form 3811), which bears the signature of "Ryan Jones" as the receiving agent for the Division of Child Support Enforcement. Copies of the notice letters, certified mail receipts, and signed return receipts are attached hereto as Exhibit D-2.

30. As of the date of this Complaint, more than eighteen (18) days have elapsed since Equifax's most recent confirmed, personally signed-for receipt of direct notice on August 1, 2026. Neither DCSE nor Equifax has corrected the furnishing or reporting of the subject account. As of the date of this

Complaint, the furnisher continues to supply the subject account to Equifax, and Equifax continues to report it.

G. Actual Damages

31. On or about May 8, 2026, Plaintiff applied for a PenFed Credit Card (Application No. 53580152). PenFed Credit Union obtained a consumer credit report from Equifax in connection with said application. By letter dated May 8, 2026, PenFed denied Plaintiff's application, stating as the principal reason for denial: "Utilization of accounts, number of accounts, and/or occurrence of a derogatory event." PenFed's adverse action letter expressly identifies Equifax as the source of the report upon which the denial was based, stating: "The credit reporting agency that furnished the information used in connection with this review is: Equifax Information Services LLC, P.O. Box 740241, Atlanta, GA 30374-0241." PenFed further disclosed Plaintiff's credit score as 723, and identified "Number of accounts with delinquency" as a factor that adversely affected the score. The false Collection Account attributed to the Division of Child Support Enforcement and published by Equifax — a derogatory collection tradeline with active delinquency reporting through May 2026 — directly contributed to the "derogatory event" and "accounts with delinquency" cited by PenFed as grounds for denial. The PenFed adverse action letter is attached hereto as Exhibit E.

32. Plaintiff operates a credit education, credit repair, and funding assistance business known as Royalty Legacy Group. Plaintiff's personal credit standing is directly and materially relevant to his professional

credibility, his ability to secure business financing, and his standing in the credit and funding industry. The false Collection Account published by Equifax on Plaintiff's consumer credit report has impaired Plaintiff's ability to obtain financing, has damaged his professional reputation, and has caused Plaintiff significant emotional distress, anxiety, and mental anguish.

## V. CAUSES OF ACTION

### COUNT I
### WILLFUL VIOLATION OF 15 U.S.C. § 1681e(b)
### (FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY)

33. Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as though fully set forth herein.

34. Section 1681e(b) of Title 15 of the United States Code provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the information relates."

35. Equifax reported, and continues to report, a Collection Account on Plaintiff's consumer credit report that is legally void. The underlying obligation was vacated by a court of competent jurisdiction — the Chesterfield Juvenile & Domestic Relations District Court, Case No.

JA086141-02-00 — due to a complete absence of service, a fact admitted on the record by the furnisher's own counsel.

36. Equifax received actual, direct, personally signed-for notice of the inaccuracy of this account through no fewer than nine (9) dispute cycles, multiple CFPB complaints, and five (5) separate direct certified mail notices personally received and signed for by the same identified Equifax representative, "James McKellar," on May 27, July 22 (twice), July 29, and August 1, 2026. Despite such sustained and repeated actual notice, Equifax continued and continues to publish the account.

37. Equifax's procedures were not reasonable. Reasonable procedures would have included: (a) reviewing the court order submitted by Plaintiff; (b) recognizing that a vacated judgment cannot support a derogatory tradeline; and (c) deleting the account. Equifax instead relied solely on automated e-OSCAR verification from a furnisher whose own court filings admitted that the obligation was never validly established, notwithstanding Equifax's own repeated, direct, and personal receipt of the vacating order by certified mail on five separate occasions, and notwithstanding Equifax's own written admission on July 23, 2026 that it closed its investigation one day after receiving that order without genuinely reviewing it.

38. The following specific inaccuracies demonstrate Equifax's failure to follow reasonable procedures:

a. No Date of First Delinquency is reported, violating 15 U.S.C. § 1681c(c);

b. The reported Balance ($928.00) exceeds the reported High Credit ($856.00);

c. Inconsistent Account Status and Charge Off coding under the Metro 2 Format;

d. Active derogatory updates as recently as May 2026, nineteen (19) months after the vacating Order;

e. A separate consumer reporting agency, TransUnion, independently deleted the identical tradeline using the same documentation provided to Equifax.

39. Equifax's continued reporting of the subject account after receiving actual, direct, and repeatedly personally acknowledged notice of its inaccuracy constitutes willful conduct within the meaning of 15 U.S.C. § 1681n.

40. As a direct and proximate result of Equifax's willful violation of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including credit denial, financial harm, emotional distress, and injury to his professional reputation. Plaintiff is entitled to statutory damages in the amount of $100.00 to $1,000.00 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to § 1681n(a)(2), and the costs of the action pursuant to § 1681n(a)(3).

COUNT II

WILLFUL VIOLATION OF 15 U.S.C. § 1681i(a)(1)(A)

(FAILURE TO CONDUCT REASONABLE REINVESTIGATION)

41. Plaintiff incorporates by reference each and every allegation set forth in

all preceding paragraphs as though fully set forth herein.

42. Section 1681i(a)(1)(A) of Title 15 of the United States Code requires consumer reporting agencies, upon receipt of a dispute from a consumer, to conduct a reasonable reinvestigation of the disputed information "before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute."

43. Plaintiff disputed the subject account with Equifax no fewer than nine (9) separate times. In each instance, Equifax failed to conduct a reasonable reinvestigation. A reasonable reinvestigation would have revealed that:

a. The furnisher's underlying order was vacated for lack of service;

b. The furnisher's own counsel admitted non-service on the record in open court;

c. A separate consumer reporting agency (TransUnion) deleted the identical tradeline;

d. The account lacks a DOFD as required by 15 U.S.C. § 1681c(c);

e. The reported balance exceeds the reported high credit — a mathematical inconsistency under the Metro 2 Format;

f. The current operative court order (August 22, 2025) reflects zero arrears.

44. Equifax's reinvestigations consisted solely of forwarding the dispute through the e-OSCAR automated system and accepting the furnisher's automated verification without any independent review of the court documentation provided by Plaintiff — notwithstanding Equifax's own direct, personal, signed-for receipt of that same court documentation by

certified mail on five separate occasions.

45. Equifax's July 23, 2026 written response (Exhibit H) is direct, documentary proof of Equifax's failure to conduct a reasonable reinvestigation: Equifax closed its investigation of the subject account, on the stated ground that "no new relevant information was provided," one day after personally receiving and signing for Plaintiff's certified mail enclosing the very court order that voided the underlying obligation. No reasonable reinvestigation procedure permits a consumer reporting agency to receive dispositive legal documentation by certified mail and, within twenty-four hours, declare that documentation irrelevant without review.

46. Equifax's failure to conduct a reasonable reinvestigation across nine (9) separate cycles — including its August 5, 2026 reinvestigation (Exhibit I), which increased rather than corrected the reported balance — despite being provided with a certified vacating court order each time, including by five separate instances of direct personal delivery, and despite Equifax's own documented same-week receipt-and-rejection sequence in July 2026 — constitutes willful noncompliance with 15 U.S.C. § 1681i within the meaning of 15 U.S.C. § 1681n.

47. As a direct and proximate result of Equifax's willful violation of § 1681i, Plaintiff has suffered actual damages and is entitled to statutory damages in the amount of $100.00 to $1,000.00 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to § 1681n(a)(2), and the costs of the action pursuant to § 1681n(a)(3).

COUNT III

WILLFUL VIOLATION OF 15 U.S.C. § 1681i(a)(6)(B)(iii)

(FAILURE TO PROVIDE METHOD OF VERIFICATION)

48. Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as though fully set forth herein.

49. Section 1681i(a)(6)(B)(iii) of Title 15 of the United States Code provides that a consumer reporting agency shall provide to the consumer, within fifteen (15) days of a request, "a description of the procedure used to determine the accuracy and completeness of the information," including "the business name, address, and telephone number of any furnisher."

50. Plaintiff requested Equifax's Method of Verification for the subject account in his CFPB complaints and in prior dispute correspondence, including in his direct certified mail notices to Equifax. Equifax has failed and refused to provide this information. Equifax's July 23, 2026 written response (Exhibit H) likewise fails to describe any procedure used to determine accuracy — it states only that the item was "previously... verified as accurate," without describing what, if anything, was reviewed.

51. Equifax's failure to provide a Method of Verification constitutes a willful violation of 15 U.S.C. § 1681i(a)(6)(B)(iii), entitling Plaintiff to statutory and actual damages under 15 U.S.C. § 1681n.

COUNT IV

VIOLATION OF 15 U.S.C. § 1681c(c)

(REPORTING WITHOUT A COMPLIANT DATE OF FIRST DELINQUENCY)

52. Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as though fully set forth herein.

53. Section 1681c(c) of Title 15 of the United States Code prohibits consumer reporting agencies from reporting accounts that precede more than seven (7) years, measured from the date of commencement of the first delinquency, plus one hundred eighty (180) days.

54. Equifax reports the subject Collection Account without any Date of First Delinquency — the applicable field reads "N/A." Without a DOFD, Equifax cannot demonstrate compliance with the seven-year reporting limitation set forth in § 1681c(c).

55. Equifax's reporting of the subject account without a DOFD is a per se violation of 15 U.S.C. § 1681c(c) and independently demonstrates a failure to follow reasonable procedures under 15 U.S.C. § 1681e(b).

COUNT V

NEGLIGENT VIOLATION OF 15 U.S.C. § 1681o

(NEGLIGENT NONCOMPLIANCE WITH THE FCRA)

56. Plaintiff incorporates by reference each and every allegation set forth in

all preceding paragraphs as though fully set forth herein.

57. In the alternative to the willful violations alleged in Counts I through IV above, and in the event that Equifax's conduct is determined not to constitute willful noncompliance, Equifax negligently failed to comply with the FCRA by:

a. Failing to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b);

b. Failing to conduct reasonable reinvestigations of disputed information under 15 U.S.C. § 1681i;

c. Reporting information without a compliant DOFD under 15 U.S.C. § 1681c(c);

d. Failing to provide a Method of Verification under 15 U.S.C. § 1681i(a)(6)(B)(iii).

58. Plaintiff has suffered actual damages as a direct and proximate result of Equifax's negligent noncompliance with the FCRA, including but not limited to credit denial, financial harm, and emotional distress.

59. Pursuant to 15 U.S.C. § 1681o, Plaintiff is entitled to recover actual damages and the costs of the action.

VI. DAMAGES

60. Emotional distress. As a direct and proximate result of Equifax's violations, Plaintiff has suffered severe and continuing emotional distress.

Plaintiff spent years diligently rebuilding his credit from the ground up. Equifax's continued publication of a legally void collection — despite nine (9) separate disputes, five (5) personally signed-for certified notices, and a court order vacating the underlying obligation — has frustrated Plaintiff's diligent efforts and kept his credit profile impaired at the precise moment he most needs it. Plaintiff is the sole provider for a family of four, including his 11-year-old stepdaughter and 9-month-old son residing with him, and his 4-year-old daughter who resides in another state, and is attempting to purchase a home for his family. The prolonged, repeated, and apparently futile dispute process has caused Plaintiff anxiety, frustration, and emotional anguish that he has endured continuously for more than a year.

61. Injury to Plaintiff's livelihood. Plaintiff is a credit and funding professional whose business depends on his own demonstrated creditworthiness. A false collection account — particularly one falsely suggesting a failure to support his children — published on the very consumer reports upon which Plaintiff's professional reputation rests, is uniquely injurious to Plaintiff's professional standing and business interests.

62. Impaired home purchase. Plaintiff has been actively working to purchase a home for his family. The false Collection Account impairs Plaintiff's ability to qualify for a residential mortgage at a competitive interest rate, directly inflating the cost of any mortgage Plaintiff may obtain and delaying his family's ability to secure housing.

63. Out-of-pocket expenses. Plaintiff has incurred substantial out-of-pocket costs in his efforts to correct the false reporting: over nine (9) dispute

rounds, Plaintiff sent numerous certified mailings, each costing approximately $12.00 in certified mail, return receipt, and postage fees, together with copying and printing costs — expenses documented in part by the certified mail receipts and return receipts attached as Exhibit D-1, totaling in the hundreds of dollars.

64. Exclusion from credit markets. Following the May 2026 denial by PenFed Credit Union, Plaintiff ceased submitting credit and financing applications altogether. Each credit application generates a hard inquiry on Plaintiff's consumer report, which itself lowers his credit score, and Plaintiff had no reason to expect approval while the false Collection Account remained on his report. Plaintiff therefore stopped applying — for personal credit, for business financing, and for mortgage prequalification — to avoid compounding injury to his credit profile through inquiries on applications that would be denied on the basis of Equifax's false reporting. Plaintiff has thus been effectively frozen out of the credit market entirely, an ongoing and continuing injury caused by Equifax's publication of the false account.

65. Defendant's documented history of unlawful reinvestigations. Equifax's failures in this case are not isolated. On January 17, 2025 — while Plaintiff's disputes were pending — the Consumer Financial Protection Bureau issued a Consent Order against Equifax Information Services LLC (File No. 2025-CFPB-0002), finding that Equifax's processes for investigating consumer credit file disputes violated the FCRA, ordering Equifax to comply with federal law, and imposing a $15,000,000 civil money penalty for improper investigations of credit reporting errors. Equifax was therefore on documented regulatory notice — before and during its handling of Plaintiff's

nine (9) disputes — that its dispute-reinvestigation systems were deficient. Equifax's continuation of the same rubber-stamp reinvestigation practices against Plaintiff, after being fined $15,000,000 by the federal regulator for those same practices, further demonstrates willfulness within the meaning of 15 U.S.C. § 1681n and supports an award of punitive damages.

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Curtis Richard Myrie respectfully requests that this Court enter judgment in his favor and against Defendant Equifax Information Services LLC, and grant the following relief:

A. Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) in the amount of $1,000.00 for each willful violation of the FCRA, including but not limited to:

i. Each of the nine (9) separate reinvestigations that failed to correct the subject account in violation of 15 U.S.C. § 1681i;

ii. Each of the five (5) separate instances of direct, personally signed-for notice that failed to result in correction, in violation of 15 U.S.C. § 1681e(b) and § 1681i;

iii. Equifax's July 23, 2026 written closure of its investigation one day after receiving the vacating court order, in violation of 15 U.S.C. § 1681i;

iv. Each publication of the inaccurate account to a third party in violation of 15 U.S.C. § 1681e(b);

v. Each monthly derogatory update published by Equifax in violation of 15 U.S.C. § 1681e(b);

vi. Failure to provide a Method of Verification in violation of 15 U.S.C. § 1681i(a)(6)(B)(iii);

vii. Reporting without a compliant Date of First Delinquency in violation of 15 U.S.C. § 1681c(c);

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(B) and 15 U.S.C. § 1681o, including but not limited to:

i. Damages from credit denial by PenFed Credit Union, which reviewed Plaintiff's Equifax consumer credit report;

ii. Damages from impaired business financing capacity;

iii. Damages for emotional distress, anxiety, and mental anguish;

iv. Damages for injury to Plaintiff's professional reputation as a credit and funding professional;

v. Damages for impairment of Plaintiff's pending home purchase, including elevated borrowing costs;

vi. Out-of-pocket expenses incurred in disputing the false reporting, including certified mail, return receipt, postage, copying, and printing costs;

vii. Damages for Plaintiff's exclusion from credit markets, having ceased applying for credit and financing altogether after the PenFed denial to avoid further inquiry-based injury from applications that would be denied on the basis of the false account;

C. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), in an amount to be determined by the trier of fact, for Equifax's willful and reckless disregard of Plaintiff's rights under the FCRA, as demonstrated by Equifax's repeated, personal, signed-for receipt of dispositive documentation on five separate occasions; its written same-week rejection of that documentation without

genuine review; its August 5, 2026 "reinvestigation" that increased rather than corrected the false balance; and its continuation of the precise reinvestigation practices for which it was assessed a $15,000,000 civil penalty by the Consumer Financial Protection Bureau in January 2025;

D. Injunctive relief requiring Equifax to permanently delete the Collection Account attributed to "DIVISION OF CHILD SUPPORT," Account Ending 8158 / Division of Child Support Enforcement, Division Case No. 0005516156, from Plaintiff's consumer credit report, and to permanently refrain from re-reporting or republishing this account;

E. Costs of this action pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o, including filing fees and all other recoverable costs; and

F. Such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution.

DATED: September 11, 2026 Respectfully submitted,

______________________________

CURTIS RICHARD MYRIE, Pro Se
72 Gough Avenue, Apt. 17
West Warwick, Rhode Island 02893
Telephone: 757-290-5588
Email: cmyrie10@gmail.com

## IX. EXHIBIT LIST

Exhibit A: Certified Order, Chesterfield Juvenile & Domestic Relations District Court, Commonwealth of Virginia, Case No. JA086141-02-00 (October 11, 2024), vacating the Administrative Support Order for lack of service.

Exhibit B: Temporary Order, Chesterfield Juvenile & Domestic Relations District Court, Commonwealth of Virginia, Case No. JA086141-03-00 (August 22, 2025), reflecting zero arrears.

Exhibit C: CFPB complaint confirmations and Equifax responses (May 2026 through July 2026).

Exhibit D-1: Certified mail receipts (USPS PS Form 3800) and signed domestic return receipts (USPS PS Form 3811) confirming five (5) separate direct written notices from Plaintiff to Equifax Information Services LLC, Attn: Office of Consumer Compliance/Legal Department, P.O. Box 740256, Atlanta, Georgia 30374, each personally received and

signed for by "James McKellar," as follows:

(1) May 27, 2026 — tracking no. 9589 0710 5270 2744 9700 73;

(2) July 22, 2026 — tracking no. 9589 0710 5270 2744 9738 76;

(3) July 22, 2026 (second mailing) — article no. 9590 9402 9588 5121 5870 38;

(4) July 29, 2026 — article no. 9590 9402 9588 5121 5870 45;

(5) August 1, 2026 — tracking no. 9589 0710 5270 3831 6006 20.

Exhibit D-2: Direct furnisher notice letters to Virginia Division of Child Support Enforcement (802 W. 9th Street, Richmond, VA 23219), certified mail receipts (USPS PS Form 3800), and signed return receipt (PS Form 3811), USPS tracking number 9589 0710 5270 2744 9700 66, showing delivery and receipt on May 27, 2026, signed by "Ryan Jones" as receiving agent, together with the certified mail receipt for Plaintiff's earlier notice mailed on or about April 27, 2026.

Exhibit E: Adverse action letter from PenFed Credit Union, dated May 8, 2026, Application No. 53580152, denying Plaintiff's credit card application and expressly identifying Equifax Information Services LLC (P.O. Box 740241, Atlanta, GA 30374-0241) as the consumer reporting agency whose report

was used in connection with the denial. The letter cites "occurrence of a derogatory event" and "number of accounts with delinquency" as factors, and discloses a credit score of 723.

Exhibit F: Equifax consumer credit report dated August 1, 2026, reflecting the subject account with all inaccuracies described herein.

Exhibit G: TransUnion deletion confirmation (June 2025), reflecting that the identical tradeline was deleted by TransUnion LLC after receiving the same documentation.

Exhibit H: Equifax written dispute-response letter dated July 23, 2026, Confirmation Number 6204514393, identifying the subject account as "DIVISION OF CHILD SUPPORT Account Ending 8158," and stating that Equifax closed its investigation on the ground that "no new relevant information was provided" — issued one day after Equifax's representative "James McKellar" personally signed for Plaintiff's certified mail enclosing the vacating court order (see Exhibit D-1, item 2).

Exhibit I: Equifax Dispute Results notice dated August 5, 2026, Confirmation Number 6215510760, reflecting a subsequent, substantive reinvestigation of the subject account in which Equifax concluded "the item belongs to you,"

increased the reported balance from $924.00 to $928.00 during the course of the "investigation," and reported a Date of 1st Delinquency of 05/01/2026 for an account with a Date Opened of 03/01/2022.

_______________________________________/

CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2026, a true and correct copy of the foregoing COMPLAINT FOR STATUTORY AND ACTUAL DAMAGES, PUNITIVE DAMAGES, AND INJUNCTIVE RELIEF UNDER THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 et seq., together with all attached Exhibits, was served upon Defendant Equifax Information Services LLC by certified mail, return receipt requested, at the following address:

Equifax Information Services LLC
Office of the General Counsel / Legal Department
P.O. Box 740256
Atlanta, GA 30374-0256

_______________________________

CURTIS RICHARD MYRIE, Pro Se
72 Gough Avenue, Apt. 17
West Warwick, Rhode Island 02893